**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSE W. PENA GRULLON,              :        Civil No. 3:20-cv-0312
                                   :
            Plaintiff              :        (Judge Mariani)
                                   :
      v.                           :
                                   :
WILLAIM PELHAM BARR, *et al.*,     :
                                   :
            Defendants             :

## MEMORANDUM

Plaintiff Jose W. Pena Grullon ("Pena Grullon"), at the time of filing of the action, an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), filed this civil action pursuant to 28 U.S.C. § 1447, 28 U.S.C. §§ 1331 and 1336, 5 U.S.C. § 701, 28 U.S.C. § 2201, or, alternatively, the Administrative Procedure Act, § 706(1), or the Constitution, requesting that the district court "take action on his [February 28, 2011] form N-400 Application for Naturalization [based on "Roll Back Date Status"]...in order for [him] to become a Naturalization citizen of the United States."[1] (Doc. 1, pp. 1, 3, 4). He is seeking immediate release or, in the alternative, "a constitutionally adequate hearing" on his N-400 Application. (*Id.* at 6). As he has since been removed from the United States, his request for immediate release is rendered moot.[2]

_____

[1] Pena Grullon mistakenly identifies the application date as February 24, 2011.

[2] On July 30, 2020. Pena Grullon notified the Court of his removal to the Dominican Republic and updated his address. (Doc. 31).

Our consideration is limited to his request for relief related to his February 28, 2011, N-400 Application.

Presently pending is Defendants' motion to dismiss Pena Grullon's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.  (Doc. 18).  For the reasons that follow, Defendants' motion will be granted.

## I.   Legal Standards

### A.   Rule 12(b)(1)

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court must determine whether the motion is a "facial" or "factual" attack. A facial attack considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* As such, a facial attack "contests the sufficiency of the pleadings." *Id.* (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* A factual attack requires a factual dispute that concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites. *Id.* (alterations in

original) (internal citations omitted) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). The plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction. *Schneller ex. rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)).

Defendants' motion presents a factual attack upon subject matter jurisdiction over Pena Grullon's claim.    (Doc. 14, p. 6).

### B.    Rule 12(b)(6)

A complaint must be dismissed under FED. R. CIV P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.... *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a

3

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F .3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

     *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

     "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] -that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

     However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must

inform the plaintiff that he or she has leave to amend the complaint within a set period of time. *Id.*

## II.   Background[3]

Pena Grullon, a native and citizen of the Dominican Republic, alleges that he is a Lawful Permanent Resident who is challenging his removal proceedings in good faith. (Doc. 1, p. 5).  He asserts that the "United States Citizenship and Immigration Services" ("USCIS") initially delayed, and then wrongfully denied his N-400 Application for Naturalization, filed on February 24(sic), 2011.  (Doc. 1, pp. 11-13, 15).  He states that he "clearly established that he satisfied all the requirement[s] for citizenship including physical presence as well as Good Moral Character during the statutory period of 5-FIVE-YEARS immediately preceding the filing of Petitioner['s] N-400-Naturalization-United States Citizenship.  The delay caused by USCIS review resulted in the denial of this case." (*Id.* at p. 18).  In light of evidence presented, he requests that this Court approve his N-400 Application and apply the "Roll Back Date." (*Id.* at pp. 3, 18).

In his February 28, 2011 naturalization application, Pena Grullon disclosed that he had been arrested and convicted of various criminal offenses, including a June 4, 1997 arrest in Bronx, New York, for Stolen Property, an August 1, 1997 arrest in New York, New York, for Public Intoxication, and a May 5, 2008 arrest in New York, New York, for Stolen

---

[3] The background has been extracted from the complaint and attached exhibits (Docs. 1, 1-1), and exhibits affixed to Defendants' supporting brief (Doc. 20-1).

Property.  (Doc 1-1, pp. 16, 55).  An Immigration Officer interviewed him on June 13, 2011,

at which time he successfully passed the English-Writing and History and Government

tests.  (*Id.* at pp. 18-22).  At some point during the interview, USCIS requested additional

information and documents related to a December 30, 1994 arrest.  (*Id.* at p. 24).  An

Immigration Officer re-interviewed him on December 1, 2011, and requested documents

related to a December 20, 1994 arrest.  (*Id.* at p. 40).  He had a third interview on January

23, 2012, and a fourth interview on June 1, 2012; at each interview, he received requests

for evidence related to the December 30, 1994 arrest.  (*Id.* at pp. 43, 45).  At his June 1,

2012 interview, USCIS requested his entire record of all convictions, even if expunged.

(Doc. 1, p. 12; Doc. 1-1, pp. 80-98).

On November 27, 2012, USCIS informed him that his application was in process and

he would be notified of the decision *via* mail.  (Doc. 1, p. 12, Doc. 1-1, p. 102).  He inquired

about the status of his application on May 8, 2013, June 21, 2013 and August 26, 2013, but

received no response from USCIS.  (Doc. 1, p. 12).  During that time, per USCIS's requests,

he renewed his fingerprints (which expire if the application is not adjudicated within fifteen

months) on April 20, 2011, December 24, 2012, and January 23, 2013.  (Doc. 1, p. 12; Doc.

1-1, pp. 48-66).

On July 22, 2013, Pena Grullon filed a Mandamus action in the United States District

Court for the Southern District of New York seeking to compel USCIS to adjudicate his

naturalization application.  *See Grullon v. Holder, et al*. No. 1:13-CV-05065 (SD NY Aug.

23, 2013).[4]  Pena Grullon's counsel's voluntarily withdrew the action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on September 13, 2013.

The mandamus action prompted USCIS to review his naturalization application. That review revealed that the December 30, 1994 arrest for which USCIS had been seeking documentation, was another individual, not Pena Grullon, and, that Pena Grullon had been arrested on May 8, 2013, for Theft of Government Property, Conspiracy and Theft of Government Property, and Aggravated Identity Theft.  On August 26, 2013, USCIS requested disposition records related to the arrest.  (Doc. 20-1, p. 3).  On September 23, 2013, his attorney personally submitted a copy of a sealed criminal complaint filed in the United States District Court for the Southern District of New York. (*Id.* at p. 5).

USCIS denied his Application for Naturalization, Form 400, on October 3, 2013, stating that he "did not submit sufficient evidence to establish that he met the good moral character requirement and hence, did not establish his eligibility for naturalization.[5]  (Doc. 20-1, pp.4-5).

On December 22, 2014, he filed Form N-336 Request for a Hearing on a Decision in Naturalization Proceedings.  (Doc. 20-1, pp. 7-10). In a supporting brief, his attorney requested that USCIS consider his application based on his eligibility at the time he filed the application in 2011, or during the subsequent two years when USCIS was attempting to

---

[4]  https://pacer.uscourts.gov/
[5]  Pena Grullon mistakenly identifies this date as October 3, 2017.  (Doc. 1, p. 13).

obtain the December 30, 1994 arrest records.  Counsel closed the brief by stating that "[t]he delay caused by USCIS review resulted in the denial of his case. Wherefore, for the reasons set forth, the Applicant respectfully requests that his N-400 Application be approved on the merits at the time of filing, that is in 2011, or alternatively, to appear before an immigration officer in order to establish his eligibility."  (*Id.* at p. 10).

On May 13, 2015, he pled guilty in the United States District Court for the Southern District of New York to one count of Theft of Government Property, Conspiracy, in violation of 18 USC § 371; one count of Theft of Government Property, in violation of 18 USC § 641; and one count of Aggravated Identity Theft, in violation of 18 USC §1028A, for conduct that occurred during June 2010, through "in or about May 2013".  (*Id.* at pp. 13-22).  The court sentenced him to a thirty-six month term of imprisonment on counts 1 and 2, followed by a consecutive two year term of imprisonment on count 3.  (*Id.* at p. 14).

On August 20, 2015, USCIS rejected his request that it limit its consideration of his eligibility to the date of his naturalization application in February 2011, or his June 2011 interview, and denied his administrative appeal.  (*Id.* at pp. 24-25).

On August 8, 2019, the Department of Homeland Security ("DHS") filed a Notice to Appear charging Pena Grullon with being an alien subject to removal based on his May 13, 2015 aggravated felony convictions.  (*Id.* at pp. 27, 28).  He has since been removed from the United States.

## III.   Discussion

Defendants argue that "[b]efore [Pena] Grullon filed this [8 U.S.C.] § 1447(b) action,

the agency had already issued a decision denying his N-400 application, and another

decision affirming that decision in response to [Pena] Grullon's administrative appeal.

Consequently, there was no statutory basis for [Pena] Grullon to bring this 1447(b) action,

and likewise no legal  basis for this court to act on that request."  (Doc. 20, p. 12).

Alternatively, Defendants argue that the disposition of both the N-400 application and the N-

336 request for administrative review, renders his 8 U.S.C. § 1447(b) claim moot. Finally,

Defendants argue that, to the extent that he is requesting that this Court engage in a *nunc*

*pro tunc* review of his N-400 application, he fails to state a claim upon which relief may be

granted.  Pena Grullon opposes the dismissal arguing that the Court has subject matter

jurisdiction pursuant to § 1447(b) and 8 U.S.C. §1361.[6]

### A.   8 U.S.C. § 1447

Title 8 U.S.C. § 1447, "Hearings on denials of applications for naturalization"

subsection (b) provides "[if there is a failure to make a determination under section 1446 of

this title before the end of the 120-day period after the date on which the examination is

_____

[6]   He also argues that we have subject matter jurisdiction pursuant to 8 U.S.C. § 1421(c). No such claim is contained in his complaint. Additionally, he includes in his brief defamation and equal protection claims. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (internal quotation and citation omitted); *see Carpenters Health 86 Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016) (party may not amend complaint in brief opposing a motion to dismiss).  These arguments, which amount to claims not contained within the complaint, will not be considered.

conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C.A. § 1447 (West).

Defendants contend that the 120 day adjudication period is triggered on the date of the applicant's initial interview. (Doc. 20, p. 11, citing *Shalabi v. Gonzales*, No. 06-866, 2006 WL 3032413 *3 (E.D. Mo. 2006; *Andron v. Gonzales*, 487 F. Supp.2d 1089, 1093 (W.D. Mo. 2007). Pena Grullon counters that the issue of subject matter jurisdiction turns on the meaning of "examination" and that there is a split of authority on this issue. (Doc. 27, p. 8). Regardless of the trigger date, Section 1447(b) clearly grants subject matter jurisdiction 120 days after the date on which the examination is conducted if there is a failure to make a determination on the application. As noted by Defendants, the USCIS issued their decision on the N-400 application on October 3, 2013, and disposed of the administrative appeal on August 20, 2015. It is undisputed that Pena Grullon's N-400 application had been fully adjudicated prior to the initiation of this action. The plain language of 1447(b) applies to unadjudicated applications. *See Duran-Pichardo v. Attorney Gen. of U.S.*, 695 F.3d 282, 286 (3d Cir. 2012). Hence, this Court lacks subject matter jurisdiction over Pena Grullon's request for relief pursuant to 8 U.S.C. § 1447(b).[7]

---

[7] Additionally, any request pursuant to 8 U.S.C. § 1447(b) is moot because Plaintiff waited until the USCIS had made a determination to seek relief. *See Abulkhair v. Bush*, 413 F. App'x 502, 505 n.1 (3d Cir. 2011)*; Perry v. Gonzales*, 472 F.Supp.2d 623, 628 (D.N.J. 2007).

**B.      8 U.S.C. § 1361**

Plaintiff also argues that this Court has mandamus jurisdiction pursuant to 28 U.S.C.

§ 1361. Section 1361 provides that "[t]he district courts shall have original jurisdiction of any

action in the nature of mandamus to compel an officer or employee of the United States or

any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (2006). The

Supreme Court has described mandamus relief under § 1361 as an "extraordinary remedy"

which "will issue only to compel the performance of 'a clear nondiscretionary duty.' " *Pittston

Coal Group v. Sebben*, 488 U.S. 105 (1988); see also *Heckler v. Ringer*, 466 U.S. 602, 616

(1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to

provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only

if the defendant owes him a clear nondiscretionary duty"); *Work v. United States*, 267 U.S.

175, 177 (1925) (stating that "[m]andamus issues to compel an officer to perform a purely

ministerial duty" but "[i]t cannot be used to compel or control a duty in the discharge of

which by law he is given discretion").

A "party seeking mandamus has the burden of showing that its right to issuance of

the writ is clear and indisputable." *Will v. United States*, 389 U.S. 90, 96 (1967) (quotations

omitted).  Specifically, a plaintiff must establish (1) that they lack another adequate remedy,

(2) that Defendants owe them a clear duty to act, and (3) that they have a clear and

indisputable right to the relief sought. *Mallard v. U.S. District Court for So. District of Iowa*,

490 U.S. 296, 309 (1989); *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

Pena Grullon is seeking an order compelling the USCIS to conduct a *nunc pro tunc* review of his N-400 application as of the date of its submission, in 2011, as if he was not an aggravated felon and, thus, still eligible for citizenship. In considering this very issue in the context of a petition for review of a removal order, the United States Court of Appeals for the Third Circuit stated as follows:

> Duran–Pichardo argues that he is entitled to *nunc pro tunc* review of his naturalization application. "*Nunc pro tunc* " consideration "permits acts to be done after the time they should have been done with a retroactive effect." *Barden v. Keohane*, 921 F.2d 476, 478 n. 2 (3d Cir.1990). Essentially, Duran–Pichardo wants us to order the agency to review his application as if he was not an aggravated felon and, thus, still eligible for citizenship.
>
> However, we clearly lack the authority to provide *nunc pro tunc* relief here. Equitable relief is unavailable if it would require agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding. *See* 8 U.S.C. § 1429; *see also, Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 209 (3d Cir.2011) ("[A] court may not award equitable relief in contravention of the expressed intent of Congress.") (internal citations omitted); *Ajlani v. Chertoff*, 545 F.3d 229, 240–41 (2d Cir.2008) ("[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending....").

*Duran–Pichardo v. Attorney General*, 695 F.3d 282, 288 (3d Cir. 2012).

Two separate Third Circuit panels that have considered the issue and reaffirmed the *Duran-Pichardo* holding. In *Baptiste v. Attorney Gen. United States*, 806 F. App'x 83, 85–86 (3d Cir. 2020), it was undisputed that the petitioner was not presently entitled to be naturalized. He, too, asserted that his naturalization applications should be considered *nunc pro tunc* as if he were not an aggravated felon and that USCIS unreasonably and

arbitrarily delayed the processing of his applications.  In concluding that his argument was

foreclosed by *Duran-Pichardo*, the court stated as follows:

> Like Baptiste, the petitioner in *Duran-Pichardo* had commenced naturalization
> proceedings, but then committed an aggravated felony before the application
> was adjudicated. The petitioner, who was subject to a final order of removal,
> argued that he was entitled to *nunc pro tunc* review of his naturalization
> application as if he were still eligible for citizenship. We rejected that argument,
> noting that a court may not grant equitable relief in contravention of the
> expressed intent of Congress, *id.* at 288 (citing *Cheruku v. Att'y Gen.*, 662 F.3d
> 198, 209 (3d Cir. 2011)), and the Immigration and Nationality Act expressly
> prohibits the naturalization of any person against whom a final order of removal
> has been entered, *see id.* at 288 (citing 8 U.S.C. § 1429). Therefore, we held
> that "[e]quitable relief is unavailable if it would require agency review of an
> alien's naturalization application while that alien is the subject of an outstanding
> finding of deportability or a pending removal proceeding." *Id.* at 288. Because
> Baptiste is subject to a final order of removal, he is not entitled to *nunc pro tunc*
> review of his naturalization application, for the reasons that we expressed in
> *Duran-Pichardo*.

*Baptiste v. Attorney Gen. United States*, 806 F. App'x 83, 85–86 (3d Cir. 2020).

Similarly, in *Gonzalez-Lora v. U.S. Dep't of Justice*, 629 F. App'x 182, (3d Cir. 2015),

the petitioner acknowledged that he was not entitled to be naturalized because his

aggravated-felony conviction prevented him from demonstrating that he had maintained

good moral character.  He therefore sought *nunc pro tunc* consideration of his application so

that it may be granted without consideration of his conviction.  In referencing *Duran-*

*Pichardo*, the court stated:  "We noted that 8 U.S.C. § 1429 prohibits the naturalization of

any person against whom a final order of removal has been entered, *id.* at 277, and

observed that we may not grant equitable relief in contravention of the expressed intent of

Congress, *id.* at 288. Consequently, we held that "[e]quitable relief is unavailable if it would

require agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding." *Id.* at 288. As noted above, Gonzalez–Lora is subject to a final order of removal. Accordingly, for the reasons that we expressed in *Duran–Pichardo*, [he] is not entitled to *nunc pro tunc* review of his naturalization. *Gonzalez-Lora*, 629 F. App'x at 184.

Pena Grullon's mandamus claim, seeking an order compelling Defendants to consider his N-400 application *nunc pro tunc*, is no different than the claims advanced in *Duran-Pichardo*, *Baptiste*, or *Gonzalez Lora*. Pena Grullon, as an individual subject to a final order or removal at the time he filed this action based on the commission of an aggravated felon, is not eligible for the equitable relief he seeks.[8] Consequently, we will grant Defendants' motion to dismiss the mandamus claim for failure to state a claim upon which relief may be granted.

## IV.   Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital,* 293 F.3d 103, 114 (3rd Cir. 2002). The Court concludes that granting Pena Grullon leave to amend would be futile as we are unable to grant the relief he seeks.

---

[8]   It bears noting that, whether the claim is fashioned as a mandamus action, an Administrative Procedures Act claim, or otherwise, *Duran-Pichardo* precludes us from granting relief in the form of a *nunc pro tunc* review of his N-400 application.

V.     **Conclusion**

Based on the foregoing discussion, Defendants' motion to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) will be granted.

A separate Order shall issue.

Dated: February 25, 2021

Robert D. Mariani
United States District Judge